UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

No. 7:26-CR-24

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL INFORMATION |
| | ) | |
| PHILLIP COLLINS | ) | |
| | ) | |

The United States Attorney charges:

## GENERAL ALLEGATIONS

At all times relevant to this Information:

1.     The defendant, PHILLIP COLLINS, was a resident of Maxton, North Carolina, within the Eastern District of North Carolina.

### EIDL Program

2.     The Coronavirus Aid, Relief, and Economic Security Act (CARES Act) was a federal law enacted on March 27, 2020, designed to provide emergency financial assistance to the millions of Americans who were suffering the economic effects of the COVID-19 pandemic. One source of funding for small businesses under the CARES Act was the Economic Injury Disaster Loan (EIDL) program administered by the U.S. Small Business Administration (SBA).

3.     COVID-19 EIDL loan funds could be used by eligible business applicants for working capital and other normal operating expenses (e.g., payroll). The loans were not forgivable and were required to be repaid within a set term. The loan amount was based on the applicant's gross income and cost of goods sold. EIDL Advance funds, which did not have to be repaid, were awarded to existing COVID-

19 EIDL loan applicants in 2020 who met certain criteria. The EIDL Advance amount was based on the applicant's number of employees. The maximum amount available was $10,000. All EIDL applications were submitted online directly to the SBA and processed through servers located outside the Eastern District of North Carolina.

*PPP Program*

4. Another source of relief provided by the CARES Act and subsequent legislation was the Paycheck Protection Program (PPP). The PPP program, which was also administered by the SBA, provided forgivable loans to small businesses in operation before February 15, 2020, to facilitate job retention and the payment of certain qualifying business expenses.

5. In March 2021, individuals who operated "sole proprietorships" also became eligible for PPP loans. To qualify, individuals had to report and document their income and expenses for the sole proprietorship, as typically reported on a federal income tax return (IRS Form 1040 / Schedule C). This information was used to calculate the amount of loan proceeds the individual was entitled to receive under the program. The maximum PPP loan amount for a sole proprietor with no employees was $20,833. Any applicant who reported $100,000 or more in gross income was eligible to receive the maximum amount.

6. Applicants submitted PPP applications electronically to SBA-approved lenders throughout the United States. If the loan was approved, the participating lender disbursed the funds to the applicant. The PPP program ended on May 31, 2021.

2

## COUNT ONE
### (Conspiracy to Commit Wire Fraud)

7. The preceding paragraphs of this Information are incorporated herein by reference as factual allegations.

8. From at least in or around July 2020, and continuing until at least in or around February 25, 2021, both dates being approximate and inclusive, in the Eastern District of North Carolina and elsewhere, the defendant, PHILLIP COLLINS, did knowingly and willfully combine, conspire, confederate, and agree with others, known and unknown, to commit wire fraud, that is, having devised and intending to devise a scheme to defraud the SBA and SBA-approved lenders in connection with the EIDL and PPP programs, and to obtain money and property from such programs by means of materially false and fraudulent pretenses, representations, and promises, and for the purpose of executing the scheme, and attempting to do so, transmitted and caused to be transmitted wire communications in interstate commerce, in violation of 18 U.S.C. §§ 1343 and 1349.

### Purpose of the Conspiracy

9. The purpose of the conspiracy was to unjustly enrich COLLINS and his co-conspirator by unlawfully obtaining over $170,000 in EIDL and PPP proceeds during the height of the COVID-19 pandemic by submitting, and causing to submit, materially false and fraudulent applications and supporting documents to the SBA and participating lenders.

3

## Manner and Means of the Conspiracy

10. It was part of the conspiracy and scheme that COLLINS and his co-conspirator to prepare and submit false and fraudulent EIDL/PPP loan applications in the names of his alleged businesses.

11. It was further part of the conspiracy and scheme that COLLINS and his co-conspirator to use sham, fictitious, inactive, or otherwise ineligible businesses to apply for the EIDL/PPP funds.

12. It was further part of the conspiracy and scheme that COLLINS and his co-conspirator to prepare and submit EIDL/PPP applications containing materially false and fraudulent statements about the purported businesses, including the number of employees, average monthly payroll, gross revenues, and costs of goods sold.

13. It was further part of the conspiracy and scheme that COLLINS and his co-conspirator created and submitted false and fraudulent federal tax documents to support loan eligibility and amounts, including fabricated IRS Form 1040-Schedules C falsely reporting gross income from self-employment.

14. It was further part of the conspiracy and scheme that COLLINS and his co-conspirator created and submitted false and fraudulent invoices to make it appear as if the alleged business was active and generating revenue on or before the PPP eligibility date.

15. It was further part of the conspiracy and scheme that COLLINS and his co-conspirator submitted the falsified documents electronically to the SBA and

participating lenders through email communications and online portals located outside the Eastern District of North Carolina.

16.     It was further part of the conspiracy and scheme that COLLINS and his co-conspirator used the fraudulently obtained proceeds—which were intended to support struggling small businesses—for personal gain, including funding lifestyle expenses unrelated to any legitimate business activity.

All in violation of Title 18, United States Code, Sections 1343 and 1349.

### FORFEITURE NOTICE

Notice is hereby given that all right, title and interest in the property described herein is subject to forfeiture.

Upon conviction of any offense charged herein constituting "specified unlawful activity" (as defined in 18 U.S.C. §§ 1956(c)(7) and 1961(1)), or a conspiracy to commit such offense, the defendant shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C), as made applicable by 28 U.S.C. § 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the said offense.

The forfeitable property includes, but is not limited to, the following:

Forfeiture Money Judgment

a) A sum of money representing the gross proceeds of the offense charged herein against PHILLIP COLLINS, in the amount of $170,833.

If any of the above-described forfeitable property, as a result of any act or omission of a defendant: cannot be located upon the exercise of due diligence; has been transferred or sold to, or deposited with, a third party; has been placed beyond the jurisdiction of the court; has been substantially diminished in value; or has been

5

commingled with other property which cannot be divided without difficulty; it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of said defendant up to the value of the forfeitable property described above.

W. ELLIS BOYLE
United States Attorney

ETHAN A. ONTJES
Assistant United States Attorney
Criminal Division

Date: 03/31/26